GEOFFREY M. GODFREY (SBN 228735)
godfrey.geoff@dorsey.com
DORSEY & WHITNEY LLP
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
Telephone:   (206) 903-8800
Facsimile:   (206) 903-8820

*Counsel for Defendant*
*Hall Enterprises, Inc. d/b/a*
*Logistics Planning Services*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIPPING & TRANSIT LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>HALL ENTERPRISES, INC. d/b/a<br>LOGISTICS PLANNING SERVICES,<br><br>                    Defendant. | Case No. 2:16-cv-06535-AG-AFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS**<br><br>Judge:  Hon. Andrew J. Guilford<br>Date:  January 9, 2017<br>Time:  10:00 a.m.<br>Courtroom:  10D |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTS ...................................................................................................... 2

III.  ARGUMENT ............................................................................................. 5

    A.    Legal Standards .............................................................................. 5

        1.    Costs ...................................................................................... 5

        2.    Attorney Fees ........................................................................ 6

    B.    LPS Is The Prevailing Party .......................................................... 7

    C.    This Is An Exceptional Case .......................................................... 7

        1.    S&T's § 101 Position Was Objectively Unreasonable .............. 8

        2.    S&T Litigated In An Unreasonable Manner ............................ 13

    D.    LPS Should Be Awarded Its Costs And Attorney Fees, With
The Specific Amounts To Be Determined At A Later Date .............. 18

IV.   CONCLUSION ......................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) .........................................................10

*Alice Corp. v. Pty. Ltd. v. CLS Bank Int'l.*,
    134 S. Ct. 2347 (2014).........................................................8, 10, 11

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) .........................................................10

*Boar's Head Corp. v. DirectApps, Inc.*,
    No. 2:14-cv-01927, 2015 U.S. Dist. LEXIS 98502 (E.D. Cal. Jul.
    28, 2015) .........................................................................12

*Cyberfone Sys., LLC v. CNN Interactive Grp.*,
    588 Fed. App'x 988 (Fed. Cir. 2014) .........................................12

*eDekka LLC v. 3balls.com, Inc.*,
    No. 2:15-cv-541, 2015 U.S. Dist. LEXIS 168610 (E.D. Tex. Dec.
    17, 2015) .....................................................................*passim*

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .........................................................10

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .........................................9, 10, 11

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) .................................................16, 17

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089, 2016 U.S. App. LEXIS 18313 (Fed. Cir. Oct. 11,
    2016) ...........................................................................10

*Garfum.com Corp. v. Reflections by Ruth d/b/a Bytephoto.com*,
    No. 14-cv-5919, 2016 U.S. Dist. LEXIS 41864 (D.N.J. Mar. 30,
    2016) .......................................................................8, 14, 15

ii

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
  134 S. Ct. 1744, 188 L. Ed. 2d 829 (2014)..........................................................6

*Highway Equip. Co. v. FECO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006) ........................................................................7

*Lumen View Technology, LLC v. Findthebest.com, Inc.*,
  24 F. Supp. 3d 329 (S.D.N.Y. 2014) ...............................................................16

*MacroPoint, LLC v. FourKites, Inc.*,
  No. 1:15-cv-1002, 2015 U.S. Dist. LEXIS 151045 (N.D. Ohio
  Nov. 6, 2015) ....................................................................................................9

*Mobile Telecomms. Techs., LLC v. UPS, Inc.*,
  No. 1:12-cv-3222, 2016 U.S. Dist. LEXIS 39586 (N.D. Ga. Mar.
  24, 2016), *reconsideration denied*, 1:12-cv-3222, Dkt. 171 (N.D.
  Ga. Oct. 21, 2016)..............................................................................................9

*Novartis Corp. v. Webvention Holdings LLC*,
  No. 11-cv-3620, 2015 U.S. Dist. LEXIS 146513 (D. Md. Oct. 28,
  2015) ........................................................................................................15, 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014).................................................................................*passim*

*Protegrity USA, Inc. v. Netskope, Inc.*,
  No. 15-cv-02515, 2015 U.S. Dist. LEXIS 142633 (N.D. Cal. Oct.
  19, 2015) ..........................................................................................................12

*RBC Bearings Inc. v. Caliber Aero, LLC*,
  No. 12-cv-1442, 2016 U.S. Dist. LEXIS 100521 (C.D. Cal. Aug. 1,
  2016) ..................................................................................................................7

*Ryan v. Mitre Corp.*,
  No. 2:14-cv-3177, 2016 U.S. Dist. LEXIS 31102 (C.D. Cal. Mar.
  9, 2016) ..............................................................................................................7

*Samsung Elec. Co., Ltd. v. Rambus Inc.*,
  440 F. Supp. 2d 495 (E.D. Va. 2006) ................................................................7

*Save Our Valley v. Sound Transit*,
  335 F.3d 932 (9th Cir. 2003) ......................................................................5, 18

*SFA Sys., LLC v. Newegg, Inc.*,
   793 F.3d 1344 (Fed. Cir. 2015) ...................................................................13, 18

*SiRF Technology, Inc. v. ITC*,
   601 F.3d 1319 (Fed. Cir. 2010) ...........................................................................11

*TainoApp, Inc. v. Amazon.com Inc.*,
   No. 15-cv-101, 2015 U.S. Dist. LEXIS 153490 (N.D. Cal. Nov. 12,
   2015) .........................................................................................................................7

*Trover Group, Inc. v. Dedicated Micros USA*,
   No. 2:13-cv-1047, 2015 U.S. Dist. LEXIS 107733 (E.D. Tex. Aug.
   17, 2015) ..................................................................................................................7

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
   No. 12-cv-329, 2015 U.S. Dist. LEXIS 91403 (C.D. Cal. Mar. 10,
   2015) .......................................................................................................................19

**Statutes and Rules**

35 U.S.C. § 101 .............................................................................................*passim*

35 U.S.C. § 285 .............................................................................................*passim*

Fed. R. Civ. P. 12(b)(6).......................................................................................4

Fed. R. Civ. P. 12(c)........................................................................................1, 4

Fed. R. Civ. P. 41(a)(2)...................................................................................4, 7

Fed. R. Civ. P. 54(d)(1)................................................................................5, 18

Fed. R. Civ. P. 54(d)(2)(C) .........................................................................6, 19

Fed. R. Evid. 408 ..........................................................................................3, 17

L.R. 54-1 ................................................................................................................7

L.R. 54-3 ..............................................................................................5, 18, 19

**Other Authorities**

https://trollingeffects.org/patent-owner/shipping-and-transit-llc .............................2

iv

I. **INTRODUCTION**

Plaintiff Shipping & Transit LLC ("S&T") is a notorious patent assertion entity that files hundreds of patent infringement lawsuits, mostly against small companies, and exploits the high cost of litigation to extract unwarranted settlements for amounts less than $50,000.  S&T files lawsuits with no intention of litigating the merits of its claims.  Whenever a defendant challenges the validity S&T's patents, S&T evades a ruling on the merits by settling for next to nothing or unilaterally dismissing its complaint.  Consequently, no court has had an opportunity to judge the validity of S&T's patent claims.

This pattern was replayed in the present case.  Here, S&T filed suit against Hall Enterprises, Inc. d/b/a Logistics Planning Services ("LPS"), a family owned business based in Woodbury, Minnesota, and then immediately offered to settle for an amount substantially below the cost of litigation.  When LPS stated it would challenge the validity of S&T's claims, S&T offered to settle for 40% less.  After LPS filed a Rule 12(c) motion demonstrating that S&T's patent claims are invalid as a matter of law under 35 U.S.C. § 101, S&T offered to settle for an amount 90% less than its original offer.  When LPS refused, S&T voluntarily dismissed its claims for nothing to avoid a ruling on the merits.

In 2014, the Supreme Court in *Octane Fitness* provided district courts with more discretion to combat abuses in patent litigation by awarding attorney fees to the prevailing party in cases that are exceptional with respect to either the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated.  This case is exceptional in both respects.  Not only was S&T's § 101 position objectively unreasonable, but also S&T litigated in an unreasonable manner, seeking to exploit the high cost of litigation to extract an unwarranted settlement, and then voluntarily dismissing its case to avoid judgment on the merits after LPS incurred the expense of filing a § 101 motion.

LPS should not be left to bear the burden of its attorney fees and costs.  LPS

1

respectfully requests that the Court issue an order confirming that LPS is the prevailing party and awarding LPS its attorney fees and costs. Such an award will serve the interests of justice by compensating LPS for the expenses it was unreasonably forced to incur and by deterring S&T from engaging in similar conduct in other cases.

II.   **FACTS**

S&T is a notorious patent assertion entity whose business model involves filing hundreds of patent infringement lawsuits, mostly against small companies, to extract settlements for amounts less than $50,000. Ex. A;[1] *see also* https://trollingeffects.org/patent-owner/shipping-and-transit-llc (posting examples of S&T demand letters proposing licenses for less than $50,000). S&T's litigiousness is remarkable. So far in 2016, S&T has filed more than 100 patent lawsuits, including 35 in this District. *See* Ex. B. The Wall Street Journal reported that S&T is "the largest filer of patent lawsuits in the U.S. this year." Ex. A.

S&T's patents are directed to the idea of monitoring and reporting the location of a vehicle.[2] The three patents asserted in this case have been asserted by S&T and its predecessor ArrivalStar in hundreds of other cases. Ex. C. One of these patents is the most asserted patent since 2010; the other two patents are in the top 25. Ex. D. Yet no court has had an opportunity to judge the validity of S&T's patent claims. *See* Ex. A, C. S&T avoids such judgment by promptly settling or voluntarily dismissing its complaints whenever challenged. *See, e.g.*, Ex. E (2:16-cv-06535 (C.D. Cal.); Ex. F (2:16-cv-03962 (C.D. Cal.); Ex. G (2:16-cv-03834 (C.D. Cal.); Ex. H (2:16-cv-03836 (C.D. Cal.); Ex. I (9:16-cv-81039 (S.D. Fla.).

On August 30, 2016, S&T filed its Complaint in this case against LPS, a

---

[1] Unless otherwise noted, exhibits are to the Declaration of Geoffrey M. Godfrey filed with this memorandum.

[2] S&T's patents are described in more detail in LPS's Motion for Judgment on the Pleadings. Dkt. 13-1.

MEMORANDUM ISO MOTION                                         CASE NO. 2:16-CV-06535-AG-AFM
FOR ATTORNEY'S FEES AND COSTS

1   family owned business based in Woodbury, Minnesota.  Dkt. 1.[3]  S&T did not

2   contact LPS before filing its Complaint.

3         S&T's Complaint alleged that LPS directly infringed Claim 14 of U.S.

4   Patent No. 6,763,299 ("'299 Patent"), Claims 10-12 of U.S. Patent No. 6,415,207

5   ("'207 Patent"), and Claim 19 of U.S. Patent No. 6,904,359 ("'359 Patent")

6   (collectively, the "Asserted Claims") by "making, using, offering for sale and/or

7   selling" its Transportation Management System.  Dkt. 1 ¶¶ 16, 18-29.

8         S&T's Complaint recited boilerplate infringement allegations and attached

9   screenshots from LPS's website without specifying how LPS allegedly practiced

10  the Asserted Claims.  The factual allegations in S&T's Complaint were copied

11  verbatim from other complaints, changing only the names of the defendant and the

12  accused product.  *Compare* Dkt. 1 ¶¶ 8-29 *with* Ex. J (Case No. 2:16-cv-06534

13  (C.D. Cal.), Dkt. 1) ¶¶ 1-22.[4]  Nothing in S&T's Complaint linked any particular

14  actions by LPS or its product with the steps of the Asserted Claims.

15        The day after filing its Complaint, S&T requested a meeting with LPS "to

16  discuss an amicable resolve."  Ex. K.  S&T's initial settlement offer was for an

17  amount substantially below the cost of litigation.  Ex. L (redacted).[5]

18        On September 28, 2016, LPS rejected S&T's settlement offer.  Ex. L.  LPS

19

20  [3] Unless otherwise noted, docket cites are to this case, 2:16-cv-06535 (C.D. Cal.).

21  [4] Paragraphs 1-22 of Ex. J were incorrectly numbered.  This citation references the
    paragraphs beginning on page 3 of Ex. J.

22
23  [5] S&T designated many of its emails, including those specifying the terms of its
    settlement offers, "CONFIDENTIAL SETTLEMENT COMMUNICATION
24  PURSUANT TO FRE 408."  LPS does not agree that Rule 408 prevents disclosure
    of these emails for purposes of the present motion.  In this context, the evidence is
25  not being offered to prove or disprove the validity or amount of a disputed claim
    (indeed, S&T's claims have been dismissed) or to impeach by a prior inconsistent
26  statement or a contradiction.  Out of an abundance of caution, however, LPS has
27  redacted S&T's settlement offers from the documents filed with this motion.  LPS
    will promptly provide unredacted copies if requested by the Court.
28

3

1  explained that S&T's patents are invalid and not infringed for at least the reasons

2  set forth in the § 101 motions filed in prior S&T cases. *Id.*  LPS requested that

3  S&T voluntarily dismiss its case by no later than October 15, 2016. *Id.*  LPS

4  explained that if S&T did not dismiss, LPS would pursue early judgment of

5  invalidity plus attorney fees. *Id.*

6          The next day, S&T made a new 40% lower settlement offer.  Ex. M

7  (redacted).  This offer was unacceptable to LPS for the same reasons.

8          S&T did not voluntarily dismiss the case by October 15, 2016, as LPS had

9  requested.  Accordingly, LPS began drafting an Answer and a Motion for

10  Judgment on the Pleadings addressing invalidity under § 101.  Those papers were

11  filed on November 2, 2016.  Dkt. 11, 13.

12          LPS filed a motion for judgment on the pleadings under Rule 12(c), instead

13  of a motion to dismiss under Rule 12(b)(6), specifically to preserve its ability to

14  seek attorney fees should S&T abandon its claims to avoid judgment on the merits,

15  as it had done in prior cases. *See* Dkt. 13-1 at 1.

16          On November 4, 2016, after LPS had incurred the expense of drafting its

17  Answer and Motion for Judgment on the Pleadings, S&T made a new settlement

18  offer that was 90% lower than its original offer.  Ex. M (redacted).  LPS rejected

19  this new settlement offer on November 8, 2016. *Id.*  LPS explained: "[w]e believe

20  S&T's claims are invalid and we intend to move for attorney fees if we prevail on

21  our pending motion or S&T dismisses its claims." *Id.*

22          On November 10, 2016, LPS's counsel sent S&T's counsel a copy of the

23  decision in *eDekka LLC v. 3balls.com, Inc.*, No. 2:15-cv-541, 2015 U.S. Dist.

24  LEXIS 168610 (E.D. Tex. Dec. 17, 2015), as an example of the types of cases LPS

25  intended to cite in support of its motion for attorney fees.  Ex. N.

26          On November 11, 2016, S&T moved to dismiss its own claims with

27  prejudice under Fed. R. Civ. P. 41(a)(2).  Dkt. 15.  S&T's motion was entirely

28  voluntary and not based on any agreement with LPS.  S&T attempted to evade the

4

issue of costs and attorney fees by stating in its proposed order: "Each party to bear its own attorneys' fees and costs." Dkt. 15-1 at 2.  For that reason, and also because S&T had not provided a covenant not to sue, LPS initially opposed S&T's motion to dismiss.  LPS later filed a statement of non-opposition, after S&T provided a covenant not to sue and stipulated to a new proposed order that did not require each party to bear its own attorney fees and costs.  Dkt. 17.

On November 14, 2016, because the Court had not yet granted S&T's motion to dismiss, S&T filed an opposition to LPS's motion for judgment on the pleadings regarding invalidity under § 101.  Dkt. 16.

On November 17, 2016, the Court granted S&T's motion to dismiss, and all of S&T's claims against LPS were dismissed with prejudice.  Dkt. 20.

LPS did not enter into any settlement agreement or pay any money to S&T to resolve this case.  S&T voluntarily dismissed its own case to avoid having the Court rule on LPS's motion to invalidate the claims under 35 U.S.C. § 101.

## III. ARGUMENT

LPS is the "prevailing party" and therefore should be awarded its costs to the extent taxable under L.R. 54-3.  Additionally, because S&T's § 101 position was objectively unreasonable and S&T litigated in an unreasonable manner, this case is "exceptional" and LPS should be awarded its attorney fees under 35 U.S.C. § 285.

### A.    Legal Standards

#### 1.    Costs

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  The Ninth Circuit has held that a prevailing party is presumptively entitled to recover costs, and that "a district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs [if any are provided] are not sufficiently persuasive to overcome the presumption in favor of an award." *Save*

*Our Valley v. Sound Transit*, 335 F.3d 932, 945-46 (9th Cir. 2003).

## 2. Attorney Fees

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  In this context, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  A party need only prove its entitlement to attorney fees by a preponderance of the evidence.  *Id.* at 1758.

District courts determine whether a case is "exceptional" under 35 U.S.C. § 285 on a case-by-case basis, "considering the totality of circumstances."  *Id.* at 1756.  The Supreme Court in *Octane Fitness* referred to a nonexclusive list of factors that could aid courts in this determination, "including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id.* at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19, 114 S. Ct. 1023 (1994)).  The conduct need not be independently sanctionable to render the case "exceptional."  *Id.* at 1756-57.

In the companion case to *Octane Fitness*, the Supreme Court held that "[b]ecause § 285 commits the determination whether a case is 'exceptional' to the discretion of the district court, that decision is to be reviewed on appeal for abuse of discretion."  *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748, 188 L. Ed. 2d 829 (2014).  The abuse-of-discretion standard applies to "all aspects of a district court's § 285 determination."  *Id.* at 1749.

Federal Rule of Civil Procedure Rule 54(d)(2)(C) provides that "the court may decide issues of liability for fees before receiving submissions on the value of services."

### B.   LPS Is The Prevailing Party

Local Rule 54-1 provides that "[w]hen a case is dismissed or otherwise terminated voluntarily, the Court may, upon request, determine the prevailing party."  LPS respectfully requests confirmation that it is the prevailing party for purposes of awarding costs and attorney fees.

When a plaintiff voluntarily moves to dismiss its claims with prejudice under Fed. R. Civ. P. 41(a)(2), the defendant is ordinarily regarded as the prevailing party for purposes of awarding costs and attorney fees.  *RBC Bearings Inc. v. Caliber Aero, LLC*, No. 12-cv-1442, 2016 U.S. Dist. LEXIS 100521, at *8-9 (C.D. Cal. Aug. 1, 2016); *Ryan v. Mitre Corp.*, No. 2:14-cv-3177, 2016 U.S. Dist. LEXIS 31102, at *2-3 (C.D. Cal. Mar. 9, 2016); *TainoApp, Inc. v. Amazon.com Inc.*, No. 15-cv-101, 2015 U.S. Dist. LEXIS 153490, at *2-4 (N.D. Cal. Nov. 12, 2015); *Samsung Elec. Co., Ltd. v. Rambus Inc.*, 440 F. Supp. 2d 495, 511 (E.D. Va. 2006).  This is particularly true in patent cases where the plaintiff has provided a covenant not to sue.  *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *Trover Group, Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047, 2015 U.S. Dist. LEXIS 107733, at *5-6 (E.D. Tex. Aug. 17, 2015).

Here, S&T voluntarily moved to dismiss its claims with prejudice under Fed. R. Civ. P. 41(a)(2).  Dkt. 15.  S&T also provided a covenant not to sue.  *See* Dkt. 17 at 1.  The Court's order granting S&T's motion to dismiss (Dkt. 20) created a judicially sanctioned change in the legal relationship of the parties.  Consequently, LPS should be deemed the prevailing party for purposes of awarding costs and attorney fees.

### C.   This Is An Exceptional Case

An "exceptional case" is one that stands out with respect to either the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated.  *Octane Fitness*, 134 S. Ct. at 1756.  This case is exceptional in both respects.  First, S&T's § 101 position was objectively

7

1  unreasonable, as confirmed by the parties' briefing on LPS's motion for judgment.

2  Second, S&T litigated in an unreasonable manner by seeking to exploit the high

3  cost of litigation to extract an unwarranted settlement, as it has done in hundreds of

4  prior cases, and then voluntarily dismissing its case only after LPS had incurred the

5  expense of drafting a motion to invalidate S&T's patent claims under § 101.

### 1.  S&T's § 101 Position Was Objectively Unreasonable

7  The claims of S&T's patents are invalid as a matter of law under 35 U.S.C. §

8  101 and the Supreme Court's *Alice* decision because they are directed to an

9  abstract idea—monitoring and reporting the location of a vehicle—and contain

10  nothing to transform that abstract idea into a patent-eligible application.  S&T's

11  contrary position is objectively unreasonable, despite the initial presumption

12  created when the patents were issued by the Patent Office.

13  Courts in other cases have considered a patentee's objectively unreasonable

14  § 101 arguments when awarding attorney fees.  *See, e.g.*, *Garfum.com Corp. v.*

15  *Reflections by Ruth d/b/a Bytephoto.com*, No. 14-cv-5919, 2016 U.S. Dist. LEXIS

16  41864, at *13-21 (D.N.J. Mar. 30, 2016); *eDekka LLC v. 3balls.com, Inc.*, No.

17  2:15-cv-541, 2015 U.S. Dist. LEXIS 168610, at *11-17 (E.D. Tex. Dec. 17, 2015).

18  LPS explained in detail in its Motion for Judgment on the Pleadings how

19  S&T's Asserted Claims are invalid under § 101.  *See* Dkt. 13-1 at 3-14.  LPS

20  incorporates by reference that prior explanation for purposes of this motion.  The

21  fact that S&T moved to voluntarily dismiss its case to evade a decision on the

22  merits regarding § 101 is telling.  S&T's § 101 opposition brief, filed before its

23  motion to dismiss was granted, confirms that S&T's § 101 position was objectively

24  unreasonable.

25  LPS explained in its § 101 brief how S&T's Asserted Claims are comparable

26  to claims that were held to be directed to abstract ideas in six other cases.  Dkt. 13-

27  1 at 5-11.  LPS included an exhibit reciting the language of the claims held to be

28  abstract in these six cases.  Dkt. 13-2.  S&T's opposition brief failed to address the

8

1 | substance of these cases, beyond a single sentence apparently attempting to
2 | distinguish three of the cases as "regarding requesting and receiving location
3 | information."  Dkt. 16 at 13.  S&T's opposition brief made no mention at all
4 | regarding two of the cases identified by LPS.  *See MacroPoint, LLC v. FourKites,*
5 | *Inc.*, No. 1:15-cv-1002, 2015 U.S. Dist. LEXIS 151045, at *8 (N.D. Ohio Nov. 6,
6 | 2015) ("Here, ***the claim discloses nothing more than a process for tracking***
7 | ***freight***, including monitoring, locating, and communicating regarding the location
8 | of the freight. ***These ideas are all abstract in and of themselves***.") (emphasis
9 | added); *Mobile Telecomms. Techs., LLC v. UPS, Inc.*, No. 1:12-cv-3222, 2016 U.S.
10 | Dist. LEXIS 39586, at *12-13  (N.D. Ga. Mar. 24, 2016) ("The method described
11 | by the patent has, at its core, one animating goal: notifying customers that their
12 | package is late, or that it has arrived. But business practices designed to advise
13 | customers of the status of delivery of their goods have existed at least for several
14 | decades, if not longer. . . . ***The fact that Mtel has automated the process of***
15 | ***delivery notification in a particular way does not, under the circumstances of this***
16 | ***case, render the ultimate idea behind its patent different or unique in substance***
17 | ***from the general idea itself***.") (emphasis added), *reconsideration denied*, 1:12-cv-
18 | 3222, Dkt. 171 (N.D. Ga. Oct. 21, 2016).  A review of the claim language and
19 | opinions in the six cases cited by LPS confirms that S&T's Asserted Claims are
20 | comparable and drawn to abstract ideas.  *See* Dkt. 13-1 at 5-6, 10-11; Dkt. 13-2.
21 |     S&T argued in its opposition brief that the Federal Circuit's decision in
22 | *Enfish v. Microsoft* controls.  Dkt. 16 at 10-13.  But S&T ignored the critical fact
23 | that the Asserted Claims here are nothing like the claims upheld in *Enfish*.  In
24 | *Enfish*, the Federal Circuit analyzed a patent for an "innovative logical model for a
25 | computer database." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1330 (Fed.
26 | Cir. 2016).  The logical model was "[c]ontrary to conventional logical models"
27 | because it "include[d] all data entities in a single table, with column definitions
28 | provided by rows in that same table." *Id.*  The patent disclosed an indexing

9

technique that allowed for faster searching of data as a result of the database's use of the innovative logical model.  The court only engaged in step one of the *Alice* analysis and determined that "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity."  *Id.* at 1336.  The Federal Circuit has acknowledged this important distinction in subsequent cases.  *See, e.g.*, *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 2016 U.S. App. LEXIS 18313, at *9-10 (Fed. Cir. Oct. 11, 2016); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016); *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

The claims in *Enfish* were directed to a specific improvement to the way computers operate.  Here, in sharp contrast, most of S&T's Asserted Claims do not even recite a computer or other technology for performing the method steps, and the claims of the '359 Patent merely involve using a generic computer system in its ordinary capacity to store and report information regarding the location of a vehicle.  *See* Dkt. 13-1 at 6-10.  Even S&T does not contend that the Asserted Claims are directed to a specific improvement to computer functionality.  While S&T argues that the claimed methods allow for faster—or even "real-time" (Dkt. 16 at 10-13)—monitoring and reporting of a vehicle's location, any speed increase comes from the capabilities of a generic computer system, rather than the patented method itself.  *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").  The present case is different from *Enfish*: the focus of the claims here is not on an improvement in computers as tools, but on certain independently abstract ideas that may use computers as tools.  A full reading of the Asserted Claims and the specifications fails to reveal any sort of tangible technological advance beyond a mere abstract

10

1   idea implemented using various existing technological tools.  *See* Dkt. 13-1 at 12-

2   13.  Thus, *Enfish* is distinguishable and does not save S&T's Asserted Claims.[6]

3           S&T also relied on the "machine-or-transformation test" discussed in *SiRF*

4   and other pre-*Alice* § 101 cases.  Dkt. 16 at 9-10, 12-13.  This test likewise does

5   not save S&T's Asserted Claims.  S&T argued in its brief that in order for the

6   machine-or-transformation test to weigh against the presumption of Section 101

7   validity, "the accused infringer must show that the claims are not directed to a

8   specific machine and that the claims could be performed without the machine."

9   Dkt. 16 at 9 (citing *SiRF Technology, Inc. v. ITC*, 601 F.3d 1319, 1332-33 (Fed.

10  Cir. 2010)).  Even assuming *arguendo* that S&T's formulation of the test is

11  correct,[7] LPS adequately demonstrated in its § 101 brief that the Asserted Claims

12  in this case are not directed to any specific machine and can be performed by a

13  human using generic computer technology.  *See* Dkt. 13-1 at 6-10.  LPS further

14  showed how the patent specifications "describe the technology used to accomplish

15  the abstract ideas in the broadest terms," and "acknowledge that these generically

16  described technologies were conventional and known before the alleged

17  inventions."  Dkt. 13-1 at 13 (citing examples from the specifications).  S&T's

18  opposition brief failed to address these cited excerpts from the specifications,

19  which, in combination with the claim language, undermine any argument that the

20  Asserted Claims are tied to a particular machine or apparatus.  Accordingly, the

21  machine-or-transformation test does not save S&T's claims.

22          Finally, although S&T's opposition brief incorrectly argued that LPS

23  "ignores" the claim language,[8] S&T's brief did not contend that claim construction

24  _____

    [6] Contrary to the suggestion in S&T's brief (Dkt. 16 at 10), LPS never argued that

25  *Enfish* was analogous or helpful to LPS.  LPS cited *Enfish* only for its explanation

26  of the legal standard to be applied under the first step of the *Alice/Mayo*

    framework.  Dkt. 13-1 at 5.  *Enfish* is factually distinguishable as explained above.

27  [7] S&T's formulation is different from the one provided in *SiRF*.  601 F.3d at 1332.

28  [8] LPS discussed in detail the Asserted Claims as well as the specifications.  *See*

                                          11

was necessary to resolve the § 101 issues in this case.  *See* Dkt. 16 at 1, n.2

("Plaintiff need not and does not address the proper construction of any claim

terms at this time.").  To the extent S&T believed that claim construction was

necessary, it was S&T's burden to identify the claim terms to be construed and to

put forth its proposed constructions and supporting evidence along with an

explanation of how those constructions would change the § 101 analysis.  *See, e.g.*,

*Cyberfone Sys., LLC v. CNN Interactive Grp*., 588 Fed. App'x 988, 991 n.1 (Fed.

Cir. 2014) (unpublished) (patentee's failure to explain which terms required

construction, or how the § 101 analysis would therefore differ, doomed argument

that claim construction was necessary before finding of invalidity); *Protegrity*

*USA, Inc. v. Netskope, Inc.*, No. 15-cv-02515, 2015 U.S. Dist. LEXIS 142633, at

*7 (N.D. Cal. Oct. 19, 2015) ("[W]here a patentee fails to explain which terms

require construction or how the analysis would change were those constructions

adopted, the Court may rule on the validity challenge prior to construing claims.")

(internal quotations omitted); *Boar's Head Corp. v. DirectApps, Inc.*, No. 2:14-cv-

01927, 2015 U.S. Dist. LEXIS 98502, at *18 (E.D. Cal. Jul. 28, 2015) ("Although

it is defendants' burden to show ineligibility, a court should look to the plaintiff to

show some factual dispute requiring claim construction.").  S&T failed to make

any showing that claim construction was necessary to decide the § 101 issues in

this case.

For the above reasons, as well as those explained in LPS's motion for

judgment (Dkt. 13), S&T's § 101 position was objectively unreasonable.  The

substantive weakness of S&T's § 101 position provides one basis for the Court to

find that this case is "exceptional" under 35 U.S.C. § 285.

---

Dkt. 6-10, 12-13.  S&T was the party that ignored the broad language of the
Asserted Claims and sought to rely on concepts such as "real-time knowledge of
the vehicle location by GPS" (Dkt. 16 at 10, 12) that are nowhere recited in the
Asserted Claims.

MEMORANDUM ISO MOTION                                      CASE NO. 2:16-CV-06535-AG-AFM
FOR ATTORNEY'S FEES AND COSTS

## 2.      S&T Litigated In An Unreasonable Manner

Under *Octane Fitness*, a district court also "must consider whether the case was litigated in an unreasonable manner as part of its exceptional case determination . . . ." *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015). "[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." *Id.* at 1350.

The unreasonable manner in which S&T litigated this case—seeking to exploit the high cost of litigation to extract an unwarranted settlement, and then voluntarily dismissing the case to avoid a ruling on the merits of LPS's § 101 motion—provides a second, independent basis for the Court to find that this case is "exceptional" under § 285.

Other courts have made exceptional case findings and awarded attorney fees based on comparable unreasonable conduct by patentees.

In *eDekka*, a case that LPS previously highlighted for S&T (*see* Ex. N), the Eastern District of Texas awarded attorney fees to the defendants after they prevailed on a motion to dismiss for invalidity under 35 U.S.C. § 101. *eDekka LLC v. 3balls.com, Inc.*, No. 2:15-cv-541, 2015 U.S. Dist. LEXIS 168610 (E.D. Tex. Dec. 17, 2015). In addition to finding that the plaintiff patentee's § 101 position was objectively unreasonable, the Court found that the plaintiff litigated in an unreasonable manner, which "contribute[d] significantly" to the Court's finding that the case was exceptional. *Id.* at *17-19. The Court in *eDekka* summarized the plaintiff's unreasonable conduct as follows:

> eDekka's litigation history in this District—which includes filing strikingly similar lawsuits against over 200 defendants—reflects an aggressive strategy that avoids testing its case on the merits and instead aims for early settlements falling at or below the cost of defense. Based upon the record of the above-captioned cases, as well

as the Court's *in camera* review of eDekka's '674 Patent settlements to date, the Court finds a pattern of defendants that agreed to settlements at relatively early points in the litigation for amounts significantly below the cost of taking a patent case to trial.  Further, on September 8, 2015, just two days before the September 10, 2015 § 101 hearing, counsel for eDekka contacted numerous defendants with offers to settle their cases for three-thousand dollars each.  These offers represent extraordinarily low amounts. Such offers remained open until they were withdrawn during the evening of September 9, 2015.  This clearly suggests an intent to settle with the remaining defendants rather than defend the '674 Patent claims in court.

*Id.* at *17-19.  Based on these facts, the Court found that it was "reasonable to conclude that eDekka acted with the goal of exploiting the high cost to defend complex litigation to extract nuisance value settlements from defendants."  *Id.* at *18 (internal quotations omitted).

In *Garfum.com*, the District of New Jersey awarded attorney fees to the defendant after the plaintiff voluntarily dismissed its case to avoid a decision on the merits of the defendant's § 101 motion.  *Garfum.com Corp. v. Reflections by Ruth d/b/a Bytephoto.com*, No. 14-cv-5919, 2016 U.S. Dist. LEXIS 41864 (D.N.J. Mar. 30, 2016).  The following facts illustrate the unreasonable manner in which the plaintiff in *Garfum.com* litigated its case:

The instant suit was filed without any prior contact by Plaintiff to Defendant. . . . Plaintiff initially offered Defendant a license to the '618 Patent for $50,000. . . . Almost two months later, Plaintiff lowered its demand to $5,000. . . . After this was rejected, Plaintiff again lowered its demand to $2,500. . . . One week after the $2,500 demand was made, on February 13, 2015, Defendant filed a motion to dismiss under 35 U.S.C. § 101, arguing that the '618 Patent claims unpatentable subject matter. . . . Defendant also answered the complaint, denying the claim for patent infringement, and counterclaimed for a declaratory judgment of noninfringement and invalidity and/or unenforceability of the '618 Patent. . . . On May 19, 2015, the Court set a hearing on the motion . . . . The next day, Plaintiff executed a covenant not to sue and filed a motion to dismiss the complaint and the counterclaims. . . . On May 21, 2015, the Court

granted Plaintiff's motion to dismiss, dismissed Defendant's motion to dismiss as moot, and closed the case.

*Id.* at *3-6.

The Court in *Garfum.com* found that the plaintiff's conduct was unreasonable and supported an exceptional case determination under § 285.  The Court noted in particular how the plaintiff dismissed its case to avoid a decision on the merits of the defendant's § 101 motion:

> Further, the fact that the covenant not to sue was tendered almost immediately after the Court set the motion hearing makes it appear as though Plaintiff was running away from any decision on the merits. . . . For Plaintiff to claim that it had no other option but to provide a covenant not to sue to avoid the attendant consequences of bringing a lawsuit is at odds with the fact that Plaintiff is the one who filed suit. On this ground, Plaintiff's conduct was unreasonable. . . . this Court agrees with Defendant that Plaintiff's suit was dismissed to avoid a decision on the merits, but Plaintiff continued to litigate even when it realized it had an incredibly weak litigation position. . . . While not presenting "indicia of extortion," the present case presents the type of conduct of serial filings on a non-defensible patent that should be deterred.

*Id.* at *24, 28-29.

In *Novartis*, the District of Maryland awarded attorney fees to the accused infringer, Novartis, after the patentee, Webvention, filed a covenant not to sue and moved to dismiss in response to Novartis filing a motion for judgment on the pleadings.  *Novartis Corp. v. Webvention Holdings LLC*, No. 11-cv-3620, 2015 U.S. Dist. LEXIS 146513 (D. Md. Oct. 28, 2015).  The Court determined that the case was exceptional based on multiple factors, one of which was Webvention's practice of extracting "nuisance settlements" by offering licensing fees that were far lower than the cost to defend a patent infringement lawsuit.  *Id.* at *7-14.  As summarized by the Court: "The fact that Webvention sent hundreds of demand letters to companies inducing them to quickly pay licensing fees, initiated scores of

1   lawsuits over a short period of time, and appeared to have no other business

2   purpose (and therefore little financial downside to its strategy) demonstrates that

3   the company's sole purpose was to 'exploit[] the high cost to defend complex

4   litigation to extract a nuisance value settlement' from companies allegedly using

5   the '294 patent." *Id.* at *12-13.

6          *Lumen View* is another case in which the Court made an exceptional case

7   finding and awarded attorney fees based in part on the patentee's motivation to

8   extract nuisance value settlements by exploiting the high cost of litigation. *Lumen*

9   *View Technology, LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y.

10  2014). The Court found that "Lumen's motivation in this litigation was to extract a

11  nuisance settlement from FTB on the theory that FTB would rather pay an

12  unjustified license fee than bear the costs of the threatened expensive litigation."

13  *Id.* at 336. The Court concluded that the "deterrence" factor identified in *Octane*

14  *Fitness* applied in support of an exceptional case finding:

15          The boilerplate nature of Lumen's complaint, the absence of any
16          reasonable pre-suit investigation, and the number of substantially
            similar lawsuits filed within a short time frame, suggests that Lumen's
17          instigation of baseless litigation is not isolated to this instance, but is
            instead part of a predatory strategy aimed at reaping financial
18          advantage from the inability or unwillingness of defendants to engage
            in litigation against even frivolous patent lawsuits. The need "to
19          advance considerations of . . . deterrence" of this type of litigation
20          behavior is evident. *Octane Fitness*, 134 S. Ct. at 1756 n.6 (*quoting*
            *Fogerty*, 510 U.S. at 534 n.19).
21

22  *Id.* at 336.

23          Decisions issued before *Octane Fitness* also recognize that an exceptional

24  case finding is appropriate when a patentee repeatedly exploits the high cost of

25  litigation to extract unwarranted nuisance value settlements. For example, in *Eon-*

26  *Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011), the Federal Circuit

27  affirmed an exceptional case finding and award of attorney fees in a case where the

28  plaintiff pursued baseless infringement allegations for an improper purpose. As

MEMORANDUM ISO MOTION                                    CASE NO. 2:16-CV-06535-AG-AFM
FOR ATTORNEY'S FEES AND COSTS

explained by the Federal Circuit:

> The record supports the district court's finding that Eon-Net acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from Flagstar.  At the time that the district court made its exceptional case finding, Eon-Net and its related entities, Millennium and Glory, had filed over 100 lawsuits against a number of diverse defendants . . . . Each complaint was followed by a demand for a quick settlement at a price far lower than the cost of litigation, a demand to which most defendants apparently have agreed.

*Eon-Net*, 653 F.3d at 1327 (internal quotations omitted).  The Court noted that Eon-Net's settlement offers ranged from $25,000 to $75,000.  The Court cautioned that "the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith."  *Id.* at 1328.

Here, S&T litigated in an unreasonable manner comparable to that discussed in *eDekka*, *Garfum.com*, and other cases.  Immediately after filing its complaint, S&T offered to settle the case for an amount substantially below the cost of litigation.  Ex. L (redacted).[9]  When LPS refused and stated that it would challenge the validity of the asserted claims, S&T slashed its settlement demand by 40%.  Ex. M (redacted).  When LPS again refused to pay, S&T forced LPS to incur the expense of drafting and Answer and Motion for Judgment on the Pleadings.  After LPS filed its § 101 motion, S&T made a final settlement offer that was 90% lower than its original offer.  *Id.* (redacted).  When LPS refused that offer and stated its intent to seek attorney fees, S&T voluntarily dismissed its claims for nothing to avoid a ruling on the merits of LPS's motion.  Dkt. 15.  If S&T had dismissed its claims by October 15, as specifically requested by LPS, *see* Ex. L, most of the attorney fees that are the subject of the present motion would have been avoided.

---

[9] As noted above, S&T claims that the specific amounts of its settlement offers are shielded from disclosure under Fed. R. Evid. 408.  LPS disagrees, and will promptly provide copies of S&T's settlement offers if requested by the Court.

MEMORANDUM ISO MOTION
FOR ATTORNEY'S FEES AND COSTS

CASE NO. 2:16-CV-06535-AG-AFM

S&T litigated this case in an unreasonable manner, yet this is hardly an isolated incident.  S&T's entire business model involves filing hundreds of patent infringement lawsuits, mostly against small companies, and exploiting the high cost of litigation to extract settlements for amounts less than $50,000.  *See* Ex. A. S&T has repeated its unreasonable conduct in more than 100 lawsuits filed this year alone, including 35 in this District.  *See* Ex. B.  Many defendants choose not to litigate S&T's baseless claims, which is not surprising given the high cost of litigating a patent case.  But whenever a defendant does challenge the validity S&T's claims, S&T evades a ruling on the merits by settling for next to nothing or unilaterally dismissing its complaint.  *See, e.g.*, Ex. E (2:16-cv-06535 (C.D. Cal.); Ex. F (2:16-cv-03962 (C.D. Cal.); Ex. G (2:16-cv-03834 (C.D. Cal.); Ex. H (2:16-cv-03836 (C.D. Cal.); Ex. I (9:16-cv-81039 (S.D. Fla.).

S&T's conduct fits perfectly the Federal Circuit's description of "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims . . . ."  *SFA*, 793 F.3d at 1350.  On these facts, LPS should not be left to bear the burden of its attorney fees.  An exceptional case finding and award of attorney fees is both warranted and well within the Court's discretion "to advance considerations of compensation and deterrence."  *Octane Fitness*, 134 S. Ct. at 1756 n.6 (internal quotations omitted).

**D.    LPS Should Be Awarded Its Costs And Attorney Fees, With The Specific Amounts To Be Determined At A Later Date**

As the prevailing party, LPS should be allowed to recover its costs to the extent taxable under L.R. 54-3.  *See* Fed. R. Civ. P. 54(d)(1); *Save Our Valley*, 335 F.3d at 945-46.  If the Court grants this motion, LPS will file an Application to the Clerk to Tax Costs, following the procedures outlined in the Local Rules.

Additionally, for the reasons explained above, this case is "exceptional," and LPS should be allowed to recover its attorney fees under 35 U.S.C. § 285.

MEMORANDUM ISO MOTION
FOR ATTORNEY'S FEES AND COSTS                                    CASE NO. 2:16-CV-06535-AG-AFM

Pursuant to Fed. R. Civ. P. 54(d)(2)(C), LPS respectfully requests that the Court decide only liability for attorney fees at this time.  LPS requests that briefing regarding the amount and reasonableness of its attorney fees be set for a later date – a procedure the Court has allowed in prior cases.  *See, e.g.*, *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, No. 12-cv-329, 2015 U.S. Dist. LEXIS 91403, at *25-26 (C.D. Cal. Mar. 10, 2015).  Bifurcation under Rule 54(d)(2)(C) will enable the parties to tailor their evidentiary presentation to the Court's liability decision, thus streamlining the process and avoiding unnecessary expenditures of resources and paperwork.  Accordingly, this brief does not address the amount or reasonableness of LPS's attorney fees.  LPS stands ready to provide further briefing and evidence on such issues once instruction is received from the Court.

## IV.   CONCLUSION

For the above reasons, LPS respectfully requests that the Court issue an order (1) confirming that LPS is the prevailing party, (2) awarding LPS its costs to the extent taxable under L.R. 54-3, (3) awarding LPS its reasonable attorney fees under 35 U.S.C. § 285, including fees associated with the present motion, and (4) setting a schedule for additional submissions regarding the specific amount of fees to be awarded.

Dated:  December 1, 2016                    Respectfully submitted,


                                           By:    /s/ Geoffrey M. Godfrey
                                                  Geoffrey M. Godfrey (SBN 228735)
                                                  godfrey.geoff@dorsey.com
                                                  DORSEY & WHITNEY LLP
                                                  Columbia Center
                                                  701 Fifth Avenue, Suite 6100
                                                  Seattle, WA 98104-7043
                                                  Telephone:  (206) 903-8800
                                                  Facsimile:   (206) 903-8820

                                                  *Counsel for Defendant*
                                                  *Hall Enterprises, Inc. d/b/a*
                                                  *Logistics Planning Services*

MEMORANDUM ISO MOTION                              CASE NO. 2:16-CV-06535-AG-AFM
FOR ATTORNEY'S FEES AND COSTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused to be served the foregoing pleading on the following counsel of record by the method indicated:

Rasheed McWilliams (SBN 281832)
Rasheed@cotmanip.com
Daniel C. Cotman (SBN 218315)
dan@cotmanip.com
Obi I. Iloputaife (SBN 192271)
obi@cotmanip.com
COTMAN IP LAW GROUP, PLC
35 Hugus Alley, Suite 210
Pasadena, CA 91103
(626) 405-1413/FAX: (626) 316-7577

☐ Via Facsimile
☐ Via U.S. Mail
☐ Via Electronic Mail
☒ Via ECF Notification

Attorneys for Plaintiff
Shipping & Transit, LLC

Dated:  December 1, 2016.

*/s/ Geoffrey M. Godfrey*
Geoffrey M. Godfrey

DEFENDANT'S ANSWER TO PLAINTIFF'S
COMPLAINT

CASE NO. 2:16-CV-06535-AG-AFM